**RESOLUTION TRUST CORPORATION,**
Plaintiff,

v.

**Arthur S. BILDMAN, et al., Defendants.**

**Civ. A. No. 91–632.**

United States District Court,
District of Columbia.

June 25, 1991.

---

**4**

John F. Mardula, Stauffer & Abraham, Falls Church, Va., for plaintiff.

Thomas P. Smith, O'Malley, Miles and Harrell, Upper Marlboro, Md., for defendant.

## MEMORANDUM AND OPINION

REVERCOMB, District Judge.

This suit was originally instigated by Trustbank Savings, F.S.B. ("Trustbank"), formerly Dominion Federal Savings and Loan Association, to seek redress for the defendants' alleged breach of guaranty contract. Subsequently, the Resolution Trust Corporation ("RTC") was substituted as plaintiff in its capacity as conservator for Trustbank. The parties have filed cross motions for summary judgment, and oral argument was held June 21, 1991.

## I. FACTS

On December 26, 1986, the defendants, Arthur S. Bildman and Faye S. Bildman, became guarantors of a promissory note executed by the Trustbank, as lender, and Island Plaza Limited Partnership and various individuals, referred to in the pleadings as Yousef Group, as obligors (the "new borrowers"). The Bildmans had been the original obligors on the loan commitment, which was first entered into on September 30, 1985 for the sum of $3.6 million. The loan amount was later increased to $4.86 million.

When the Bildmans changed their status from obligors to guarantors, they executed a Guaranty Agreement with the Trustbank. The relevant portion of that agreement states:

2.01 *Guaranty*—The Guarantor unconditionally and absolutely guarantees the due and punctual payment of the principal of the Loan, the interest thereon and any other money due or which may become due under the Loan Documents, and the due and punctual performance and observance by the New Borrowers of any other terms, covenants and conditions of the Loan Documents on the part of the New Borrowers to be kept, observed or performed, whether according to the present terms thereof, at any earlier or accelerated date or dates as provided therein, or pursuant to any extension of time or to any change or changes in the terms, covenants and conditions thereof, now or at any time hereafter made or granted.

2.02 *Waiver and Consents*—The Guarantor waives ... notice of every kind, and consent ... to any and all changes in the terms, covenants and conditions of the Loan Documents hereafter made or granted, and to any and all substitutions, exchanges or releases of all or any part of the collateral therefor. It is the intention hereof that the Guarantor shall remain liable hereunder until the full amount of the principal of the Loan, with interest, and any other sums due or to become due under the Loan Documents, shall have been fully paid ... notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of the Guarantor.

*See* Defs.Ex. B.

On January 1, 1988, the new borrowers defaulted on the loan. Subsequently, three separate lawsuits were filed by the parties: the Trustbank filed this suit, the defendants sued the new borrowers, and the new

borrowers sued the defendants. The latter two suits were ultimately resolved through a settlement reached in May 1989. As part of that settlement, the defendants forfeited any right of subrogation they might have against the borrowers under the Guaranty Agreement. The defendants assert that the Trustbank was made aware of the terms of their settlement with the borrowers in later settlement discussions between the defendants and the Trustbank.

On June 22, 1990, the Trustbank entered into a settlement agreement with the new borrowers (the "Settlement Agreement"). The Settlement Agreement includes a confessed judgment promissory note and release of the new borrowers. However, the agreement also states "Trustbank *expressly reserves* ... any and all claims it has against Bildman" and "nothing contained herein shall affect in any way whatsoever Bildman's obligations to Trustbank under the Guaranty." Defs.Ex. J, at 2–3.

## II. ANALYSIS

■ The Bildmans have raised several defenses to this action for breach of the Guaranty Agreement, but their arguments all stem from their assertion that the Settlement Agreement between the Trustbank and the borrowers constituted an accord and satisfaction which discharged their obligation as guarantors. Even assuming that the Settlement Agreement represents an accord and satisfaction of the underlying loan, the Bildmans are precluded from raising the defense of accord and satisfaction by the terms of the guaranty agreement. *See United States v. Krochmal*, 318 F.Supp. 148, 151 (D.Md.1970) ("[T]he language of the 'Guaranty' amounted to a consent by the guarantors that the release of the principal debtor did not discharge the guarantors."). As part of that agreement, the defendants agreed to remain obligated as guarantors until the full amount of the loan had been repaid, "notwithstanding any act, omission or thing which might otherwise operate as a legal or equitable discharge of the Guarantor." Generally an accord and satisfaction of the underlying contract will discharge a guarantor. *Woods–Tucker Leasing Corp. v. Kellum*, 641 F.2d 210, 213 (5th Cir.1981). Thus, this provision in the agreement specifically preserves the Bildmans' guaranty obligation even in the event that the borrowers should execute an accord and satisfaction with the lender.

■ The Court also rejects the defendants' assertion that the Settlement Agreement in this case constitutes an accord and satisfaction. "In order to effect an accord and satisfaction, ... the parties must intend that the payments constitute an accord and satisfaction." *Kellum*, 641 F.2d at 214. In the *Kellum* case, the Fifth Circuit held that a settlement between the lender and borrower did *not* amount to an accord and satisfaction discharging the guarantor's obligations where the lender expressly reserved its rights against the guarantor in the settlement agreement. *Id.* The Court found that, in reserving its rights against the guarantor, the lender could not have intended its settlement with the borrower as an accord and satisfaction of the loan. This Court finds the *Kellum* decision controlling and, thus, holds that the Settlement Agreement in this case between the Trustbank and the borrowers did not constitute an accord and satisfaction.

■ The defendants also argue that the Trustbank breached its duty of good faith by entering into the Settlement Agreement with the borrowers with knowledge that the defendants would have no right of subrogation against the borrowers for amounts paid on the original obligation. Although, as discussed next, issue has been raised as to whether this and other affirmative defenses are available to the defendants, the Court nonetheless is unpersuaded by this argument. The defendants waived their rights of subrogation after the borrowers had defaulted and after the collateral for the loan had been foreclosed. If anyone acted to prejudice the defendants' rights against the borrowers, it was the defendants. The Court sees no reason why the Trustbank's ability to negotiate the collection of the loan according to the terms of its loan and guaranty agreements should

**6**

be prejudiced by the defendants' voluntary waiver of their right to subrogation.

The plaintiff asserts that the other affirmative defenses raised by the defendants are insufficient to overcome the defendants' absolute and unconditional guaranty of the underlying loan. The Court agrees and, therefore, does not reach the question of whether the defenses are also barred by the *D'Oench Duhme* doctrine or 12 U.S.C. § 1823(e).

For the foregoing reasons, the Court denies the defendants' Motion for Summary Judgment and grants summary judgment in favor of the plaintiff.